[No. 34877-9-I. Division One. August 26, 1996.]

TONI RAE GUARD, *Individually and as Personal Representative, Respondent*, JEFFREY KING BEESTON, SR., *Appellant*, v. JOHN JACKSON, ET AL., *Respondents*.

326

*Eugene N. Bolin, Jr.*, for appellant.

*John C. Belcher* and *Belcher, Swanson, Lackey, Doran, Lewis & Robertson*; and *H. Douglas Spruance III*, for respondents.

BECKER, J. — Jeffrey Beeston's young son died in a car accident. Beeston, obligated to pay child support to the boy's mother, had made only occasional payments. The trial court dismissed Beeston as a plaintiff in a wrongful death suit, applying a statute that allows the father of an "illegitimate child" to recover only if the father has "regularly contributed to the child's support."[1] Because the statute does not impose a similar standing requirement on mothers, this provision violates Washington's Equal Rights Amendment.

## FACTS

Jeffrey Beeston and Toni Rae Guard lived together during the late 1980's. They became parents of a girl in 1987, and a boy, Jeffrey, Jr., in 1988. Beeston and Guard separated shortly after Jeffrey's birth.

In 1990, the State obtained a judgment establishing Beeston's paternity and requiring him to pay monthly child support. Beeston for the most part failed to meet the court-ordered obligations. In the twenty-three months following the entry of judgment, Beeston made only seven support payments. His child support arrearages for the two children amounted to over $9,000.

Jeffrey died in 1992, after being hit by a vehicle driven by John Jackson. Toni Guard filed a wrongful death complaint against Jackson. Beeston attempted to join the complaint. Guard and Jackson resisted the joinder.

The statute allowing suit for wrongful death of a child provides in part:

> The mother or father or both may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either, or both, are dependent for support: PROVIDED,

---

[1] RCW 4.24.010.

That in the case of an illegitimate child the father cannot maintain or join as a party an action unless paternity has been duly established *and the father has regularly contributed to the child's support.*

(Emphasis added.) RCW 4.24.010. The parties filed cross-motions for summary judgment on the issue of Beeston's standing to join the suit under this statute. The trial court concluded that Beeston did not have standing because he had not "regularly contributed" to Jeffrey's support. Unpersuaded that the statute was unconstitutionally discriminatory, the court dismissed him from the suit.

## REGULAR CONTRIBUTION TO SUPPORT

■ We first consider Beeston's contention that he did regularly contribute to Jeffrey's support. On appeal from an order of summary judgment, the trial court's construction of a statute is reviewed de novo.[2]

■ Beeston argues that "support" in RCW 4.24.010 means the expression of love and affection, expression of concern for a child's well-being, and the duty to provide social and moral guidance.[3] Where a term is not defined by a statute, the court looks to the statute's subject matter and the context in which the word is used.[4] In the context of statutes dealing with parent-child relations, "support" generally means providing for a child's needs for housing, food, clothing, education and health care.[5] We therefore construe RCW 4.24.010 as requiring the father to contribute regularly to the child's *material* well-being. A non-custodial father under a court order to make child

---

[2]*King County Fire Protection Dist. v. Housing Auth. of King County*, 123 Wn.2d 819, 825, 872 P.2d 516 (1994).

[3]*See In re Tarango*, 23 Wn. App. 126, 133, 595 P.2d 552, *review denied*, 92 Wn.2d 1022 (1979).

[4]*State v. Rhodes*, 58 Wn. App. 913, 920, 795 P.2d 724 (1990).

[5]*See* RCW 26.18.020(3); *see also Masunaga v. Gapasin*, 57 Wn. App. 624, 628, 790 P.2d 171, *review denied*, 115 Wn.2d 1012 (1990) (phrase "dependent for support" in RCW 4.24.010 refers to financial dependence).

support payments can meet the requirement by showing compliance with the order.[6]

Beeston's record of child support payments was poor. He often went for months at a time without making payments, and he missed more payments than he made. The trial court correctly concluded that Beeston did not regularly contribute to Jeffrey's support.

██ We also reject Beeston's argument that the phrase "regularly contributed," as used in RCW 4.24.010, is unconstitutionally vague. A party challenging a statute on vagueness grounds has the burden of proving its vagueness beyond a reasonable doubt.[7] One to whose conduct a statute clearly applies may not challenge it on the grounds that it is vague as applied to the conduct of others.[8] Beeston's record of payments in this case was not, by any understanding of the term, "regular." His uncertainty as to the exact point at which the statute would apply to a father's actions does not compel reversal on vagueness grounds.[9]

## EQUAL RIGHTS AMENDMENT

█ We next consider whether the statute violates the Equal Rights Amendment of the Washington State Constitution. Washington courts afford to all legislative enactments a presumption of constitutionality. This court must be satisfied beyond a reasonable doubt that a statute is unconstitutional before holding it so.[10]

██ Washington adopted the Equal Rights Amendment to the state constitution in 1973. The amendment provides:

[6]*See* RCW 26.18.020(3).

[7]*Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991).

[8]*Haley*, 117 Wn.2d at 740.

[9]*Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366, 78 A.L.R. 4th 1115 (1988).

[10]*Department of Ecology v. State Fin. Comm.*, 116 Wn.2d 246, 253, 804 P.2d 1241 (1991).

Equality of rights and responsibility under the law shall not be denied or abridged on account of sex.

CONST. art. 31, § 1. Washington's ERA has "swept away" traditional equal protection analysis applied to gender classifications under the federal constitution.[11] "The ERA absolutely prohibits discrimination on the basis of sex and is not subject to even the narrow exceptions permitted under traditional 'strict scrutiny.' "[12]

The trial court found that the statute did not deny equal rights, "as applied in the present case." The court observed that the mother did regularly contribute to Jeffrey's support, while the father did not:

Certainly, if the present case were one in which both Ms. Guard and Mr. Beeston had not regularly contributed to the child's support, it would appear to violate the equal rights amendment if Ms. Guard were allowed to proceed with a wrongful death action while Mr. Beeston were barred from doing so. This is not our case, however.

The trial court's rationale fails to confront the statute as written. There is no reason to consider whether the mother would satisfy the support requirement if it did apply to her. The critical fact is that the support requirement does *not* apply to her because she is a female parent. If Beeston were a female parent, the statute would confer standing to sue without further qualification.

Jackson urges us not to view the statute as creating a classification based on sex. He argues that the statute distinguishes between fathers who regularly support their illegitimate children, versus fathers who do not. The statute does make that distinction, but it makes a sex-based distinction at the same time. Any mother of a child born out of wedlock may sue for that child's wrongful death

---

[11]*Marchioro v. Chaney*, 90 Wn.2d 298, 305, 582 P.2d 487 (1978), *aff'd*, 442 U.S. 191 (1979).

[12]*National Elec. Contractors Ass'n v. Pierce County*, 100 Wn.2d 109, 127, 667 P.2d 1092 (1983) (quoting *Darrin v. Gould*, 85 Wn.2d 859, 872, 540 P.2d 882 (1975)).

without showing that she has regularly supported the child. The Equal Rights Amendment does not permit "exclusionary statutes which apply to one sex only."[13] The right to sue for the wrongful death of an illegitimate child must, under the ERA, be "equally available to members of either sex."[14]

Jackson alternatively argues that different treatment for mothers and fathers is justified inasmuch as the sexes are not similarly situated with respect to the purpose of the statute. Determining whether the sexes are similarly situated is often a starting point in standard equal protection analysis.[15] Under the ERA, differences in the societal situations of men and women are irrelevant. Laws that treat males and females differently are permissible only if they are "based upon the unique physical characteristics of a particular sex."[16] Any distinction arising from unique sex-based characteristics must have a reasonable relationship to the purposes of the statute.[17]

Jackson asserts that mothers in general, and unwed mothers in particular, bear unique hardships—the choice between birth and abortion, the physical changes of pregnancy, disruption of life and work, and social stigma in the case of an unwed mother. Not all these burdens arise from unique physical characteristics of the female sex. And if the uniquely female experiences in pregnancy and childbirth can give rise to a distinction between men

---

[13]*Marchioro*, 90 Wn.2d at 307.

[14]*Singer v. Hara*, 11 Wn. App. 247, 259, 522 P.2d 1187, *review denied*, 84 Wn.2d 1008 (1974)

[15]*See Parham v. Hughes*, 441 U.S. 347, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979) (a statute may allow a mother, but not a father, to sue for an illegitimate child's wrongful death; mothers and fathers of illegitimate children are not similarly situated because paternity is more difficult to prove than maternity.)

[16]*Singer v. Hara*, 11 Wn. App. 247, 259, 522 P.2d 1187 (1974); *see also Seattle v. Buchanan*, 90 Wn.2d 584, 591, 584 P.2d 918 (1978) (ERA not designed "to strike down laws which are based on actual differences in the sexes"); *Darrin v. Gould*, 85 Wn.2d at 872 n.8 (whether dissimilar treatment is "on account of a characteristic unique to one's sex" may be relevant inquiry under ERA).

[17]*Seattle v. Buchanan*, 90 Wn.2d at 591.

and women that the ERA will countenance, any such distinction is immaterial to the statutory purposes here.

The purpose of the challenged proviso is to exclude as plaintiffs those parents who do not support their children. A distinction between men and women has no rational relationship to that purpose. The purpose of the wrongful death statute as a whole is to allow suit for damages "for the loss of *love and companionship* of the child and for injury to or destruction of the *parent-child relationship.*"[18] The damages are those that result from the child's death, not from gestation and birth. The capacity to suffer loss when a child dies is not unique to mothers.

We hold that the support proviso of RCW 4.24.010 denies equal rights on account of sex, in violation of Washington's Constitution.

## SEVERABILITY

 Ordinarily, only the part of an enactment that is constitutionally infirm will be invalidated, leaving the rest intact.[19] An unconstitutional provision may not be severed, however, if its connection to the remaining, constitutionally sound provision is so strong "that it could not be believed that the legislature would have passed one without the other; or where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature."[20] Also, the court is obliged to strike down the entire act if the result of striking only the proviso is to give the remainder of the statute a much broader scope.[21]

Applying these rules here, we believe the Legislature would have recognized a cause of action for the death of a

---

[18](Emphasis added.) RCW 4.24.010.

[19]*Collier v. Tacoma*, 121 Wn.2d 737, 761, 854 P.2d 1046 (1993).

[20]*Leonard v. City of Spokane*, 127 Wn.2d 194, 201, 897 P.2d 358 (1995) (quoting *Hall v. Niemer*, 97 Wn.2d 574, 582, 649 P.2d 98 (1982)).

[21]*City of Seattle v. State*, 103 Wn.2d 663, 678, 694 P.2d 641 (1985) (quoting 16 Am. Jur. 2d *Constitutional Law* § 271 (1979)).

334

minor child even without the support requirement. Washington has always allowed at least one parent to bring such an action. Eliminating the support proviso in RCW 4.24.010 does not render the statute useless; the support requirement is incidental to the general purpose of permitting parents to recover damages for a child's wrongful death. And striking the proviso does not significantly broaden the scope of the statute, as the effect is only a small increase in the number of eligible plaintiffs.

We therefore strike from the first paragraph of RCW 4.24.010 the words, "and the father has regularly contributed to the child's support." On remand, Beeston may proceed as plaintiff in the action for Jeffrey's death.

Reversed.

COLEMAN and GROSSE, JJ., concur.

Review granted at 131 Wn.2d 1005 (1997).