[No. 64704-6. En Banc.]
Argued May 21, 1997.     Decided July 24, 1997.

TONI RAE GUARD, *Individually and as Parent and Personal Representative, Plaintiff*, JEFFREY KING BEESTON, SR., *Respondent*, v. JOHN JACKSON, ET AL., *Petitioners.*

SMITH, J., concurs by separate opinion.

*Belcher, Swanson, Lackey, Doran, Lewis & Robertson*, by *John C. Belcher*, for petitioners.

*The Law Offices of Eugene N. Bolin, Jr.*, by *Eugene N. Bolin, Jr.*, and *Matthew D. Dubin*, for respondent.

*Erika J. Starrs* and *Kathryn L. Tucker* on behalf of the American Civil Liberties Union, amicus curiae.

DOLLIVER, J. — RCW 4.24.010 authorizes parents to file a wrongful death action for the death of their minor child. In the case of an illegitimate child, however, the statute requires the father to have contributed regularly to the financial support of the child before the father can join in the action. The statute places no such contribution requirement on the mother of an illegitimate child. We find the support requirement violates Washington's Equal Rights Amendment (ERA) (CONST. art. XXXI, § 1).

Jeffrey King Beeston, Jr. (Jeffrey), was born to Toni Rae Guard and Jeffrey Beeston (Beeston) in 1988. Beeston and Guard never married, but Beeston's paternity of Jeffrey was established by a paternity action in 1990. In the paternity action, Guard was given custody of Jeffrey, and Beeston was required to contribute to the cost of Jeffrey's support. Beeston admits he "failed to pay all of the amounts he was ordered to pay, under the court orders . . . ." Report of Proceedings at 10.

In 1992, four-year-old Jeffrey was struck and killed by a pickup truck driven by John Jackson. Guard brought a wrongful death action against Jackson under several statutes, including RCW 4.24.010. Beeston intervened in the action, seeking to be joined as a plaintiff. Both Guard and Jackson argued to the trial court that Beeston's standing to be a plaintiff was precluded under RCW 4.24.010 because he had not regularly contributed to Jeffrey's support. The relevant language from RCW 4.24.010 states:

> PROVIDED, That in the case of an illegitimate child the father cannot maintain or join as a party an action unless paternity has been duly established and the father has regularly contributed to the child's support.

Beeston argued the quoted language violates the ERA and urged the trial court to strike the support requirement so as to allow him to remain a party to the action. The trial court upheld the constitutionality of the support requirement in RCW 4.24.010 as applied to Beeston. The court found Beeston owed more than $6,000 to Guard for Jeffrey's support at the time of Jeffrey's death, and the court dismissed Beeston from the suit.

In a published opinion, the Court of Appeals reversed the trial court and held the support requirement in RCW 4.24.010 violates the ERA by denying equal rights on account of sex. *Guard v. Jackson*, 83 Wn. App. 325, 921 P.2d 544 (1996). The court severed the support requirement from the statute and ordered the trial court to reinstate Beeston as a party to the wrongful death action. *Guard,*

83 Wn. App. at 334. Jackson petitioned this court for review.

The Equal Rights Amendment to the Washington State Constitution was adopted in 1972. The amendment states:

> Equality of rights and responsibility under the law shall not be denied or abridged on account of sex.

CONST. art. XXXI, § 1.

Prior to adoption of the ERA, we subjected classifications based upon sex to strict judicial scrutiny. *Hanson v. Hutt*, 83 Wn.2d 195, 201, 517 P.2d 599 (1973) (holding a statute with a classification based on pregnancy is subject to strict scrutiny under the state Privileges and Immunities Clause, CONST. art. I, § 12). This distaste for sex discrimination has been stronger than that evidenced by the federal courts, which apply only intermediate scrutiny to sex-based classifications. *See, e.g., United States v. Virginia*, 518 U.S. 515, 116 S. Ct. 2264, 2274, 135 L. Ed. 2d 735 (1996) (applying the intermediate scrutiny standard as stated in *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982)).

Under the less stringent federal equal protection analysis, a narrow plurality of the United States Supreme Court has upheld a Georgia statute similar to RCW 4.24.010. *Parham v. Hughes*, 441 U.S. 347, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979) (upholding a statute which precludes a father who has not legitimated his child from bringing a wrongful death action). Since *Parham* decided the issue under the more lenient federal equal protection analysis, it provides no guidance to this court's consideration under the ERA.

In 1972, the citizens of Washington state voted to approve the Equal Rights Amendment to the Washington State Constitution. The adoption of the ERA "added something to the prior prevailing law by eliminating otherwise permissible sex discrimination if the rational relationship or strict scrutiny tests were met." *Darrin v. Gould*, 85 Wn.2d 859, 871, 540 P.2d 882 (1975). "Presum-

ably the people in adopting Const. art. 31 intended to do more than repeat what was already contained in the otherwise governing constitutional provisions . . . ." *Darrin*, 85 Wn.2d at 871. In *Marchioro v. Chaney*, 90 Wn.2d 298, 582 P.2d 487 (1978), *aff'd*, 442 U.S. 191, 99 S. Ct. 2243, 60 L. Ed. 2d 816 (1979), we explained the impact of the ERA:

> Under the equal rights amendment, the equal protection/ suspect classification test is replaced by the single criterion: Is the classification by sex discriminatory? or, in the language of the amendment, Has equality been denied or abridged on account of sex? In the language of *Darrin v. Gould* at page 877, "under our ERA *discrimination* on account of sex is forbidden." (Italics ours.) *See Singer v. Hara*, 11 Wn. App. 247, 257, 522 P.2d 1187 (1974).

*Marchioro*, 90 Wn.2d at 305. *See also Southwest Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce County*, 100 Wn.2d 109, 127, 667 P.2d 1092 (1983) ("The ERA absolutely prohibits discrimination on the basis of sex and is not subject to even the narrow exceptions permitted under traditional 'strict scrutiny'.") (citing *Darrin*, 85 Wn.2d at 872).

We have found few exceptions to the ERA's prohibition against sex-based classifications. When differential treatment of the sexes is based upon actual differences between the sexes, the ERA is not violated. *City of Seattle v. Buchanan*, 90 Wn.2d 584, 584 P.2d 918 (1978) (ordinance prohibiting public exposure of female breasts is based upon actual difference between the sexes and does not violate the ERA). Furthermore, we have upheld, under ERA scrutiny, affirmative action programs which were designed to alleviate effects of past discrimination and attain equality in fact. *Electrical Contractors*, 100 Wn.2d at 127; *see also Gary Merlino Constr. Co. v. City of Seattle*, 108 Wn.2d 597, 606, 741 P.2d 34 (1987).

■ Jackson defends the support requirement in RCW 4.24.010 on the theory that the Legislature can permis-

sibly "create a right which has certain limitations." Pet. for Review at 10 (quoting *Masunaga v. Gapasin*, 57 Wn. App. 624, 634, 790 P.2d 171 (1990)). It is true that the wrongful death cause of action authorized under RCW 4.24.010 is a legislatively created right, and such "rights are peculiarly subject to legislatively created conditions." *Shoemaker v. St. Joseph Hosp. & Health Care Ctr.*, 56 Wn. App. 575, 578, 784 P.2d 562 (1990) (citing *Shope Enters., Inc. v. Kent Sch. Dist.*, 41 Wn. App. 128, 131, 702 P.2d 499 (1985)). *Shoemaker*, however, correctly limited its statement in the following way: "*If the Legislature has delineated a proper class*, it then has broad latitude in providing remedies to that class." *Shoemaker*, 56 Wn. App. at 579 (emphasis added). Because we find that fathers of illegitimate children are an improperly delineated class, as discussed below, the restriction placed on that class cannot be justified under legislative prerogative.

Jackson claims Beeston cannot challenge the constitutionality of RCW 4.24.010 because the statute does not discriminate against him. "A party may challenge the constitutionality of a statute only as applied to the party, and may not challenge it on the ground that the statute might be unconstitutional as applied to someone else." *City of Seattle v. Montana*, 129 Wn.2d 583, 598, 919 P.2d 1218 (1996) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)); *see also Marchioro*, 90 Wn.2d at 303 ("A person has standing to raise constitutional questions when his interest is a ' "personal stake in the outcome of the controversy." ' ") (quoting *De-Funis v. Odegaard*, 82 Wn.2d 11, 24, 507 P.2d 1169 (1973)).

The trial court appears to have adopted Jackson's argument concerning Beeston's ability to challenge the constitutionality of RCW 4.24.010. In the trial judge's letter to the parties announcing the court's decision to dismiss Beeston from the action, the court reasoned:

Certainly, if the present case were one in which both Ms. Guard and Mr. Beeston had not regularly contributed to the child's support, it would appear to violate the equal rights

amendment if Ms. Guard were allowed to proceed with a wrongful death action while Mr. Beeston were barred from doing so. This is not our case, however.

In the present case, it is undisputed that Ms. Guard . . . regularly supported [Jeffrey, Jr.]. By contrast, the court has ruled that Mr. Beeston did not regularly contribute to Jeffrey, Jr.'s support. Accordingly, *as applied in the present case*, the statute does not unconstitutionally discriminate against Mr. Beeston on account of sex.

Clerk's Papers at 140-41.

In finding RCW 4.24.010 constitutional as applied to Beeston, the trial court analysis strayed from the language of the ERA, which prohibits "[e]quality of rights and responsibility under the law" from being "denied or abridged on account of sex." Const. art XXXI, § 1.

RCW 4.24.010 grants an unfettered cause of action both to parents of legitimate children and to mothers of illegitimate children. The statute imposes a support requirement on just *fathers* of illegitimate children. The Legislature has limited Beeston's ability to participate in the wrongful death action on account of his being the father of an illegitimate child, whereas if he were the mother, he would have been able to participate in the lawsuit without having to prove support. *See Guard*, 83 Wn. App. at 331 ("If Beeston were a female parent, the statute would confer standing to sue without further qualification."). Because RCW 4.24.010 abridges Beeston's right to participate in Guard's lawsuit, on account of a support requirement placed only on members of the male sex, the statute, *as applied in this case*, discriminates against Beeston. He has standing to raise this constitutional challenge under the ERA.

Having found the support provision in RCW 4.24.010 discriminates against Beeston on account of his sex, we must ask whether the discrimination is allowable under any of the narrow exceptions to the ERA. Jackson asserts the differential treatment in RCW 4.24.010 is valid because it is based upon actual differences between the sexes. Jackson claims:

Under RCW 4.24.010, only a parent with a special relationship to a child is allowed to claim general damages for the death of the child. A mother (married or unmarried) risks her life to bear the child and therefore qualifies. . . . An unmarried father, on the other hand, does not necessarily assume any burden in bringing the child into the world and does not automatically qualify.

Supplemental Br. of Pet'rs Jackson at 5.

Jackson's argument fails to point to any actual difference between the sexes that would justify the discriminatory support requirement in RCW 4.24.010. The Court of Appeals' disposal of Jackson's argument is well reasoned:

The purpose of the challenged proviso is to exclude as plaintiffs those parents who do not support their children. A distinction between men and women has no rational relationship to that purpose. The purpose of the wrongful death statute as a whole is to allow suit for damages "for the loss of *love and companionship* of the child and for injury to or destruction of the *parent-child relationship*." The damages are those that result from the child's death, not from gestation and birth. The capacity to suffer loss when a child dies is not unique to mothers.

*Guard*, 83 Wn. App. at 333 (quoting RCW 4.24.010). Since there is no actual difference between the sexes that justifies the limitation of a father's right to recover damages for the death of an illegitimate child, the support provision unconstitutionally violates the ERA.

The Court of Appeals ordered the unconstitutional support provision to be severed from the remainder of RCW 4.24.010, and it ordered Beeston to be reinstated as a party to the action. Neither party has raised issue with the court's finding of severability, nor does the ruling appear to be in error. The Court of Appeals is affirmed.

DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.

SMITH, J. (concurring specially) — I fully agree with the

decision of the majority in this case. I write specially, though, to express my concern over perpetuation of the offensive term "illegitimate" in referring to a child born to parents not married to each other.

Certainly "illegitimate" is a better word than "bastard," a word common in earlier statutes and decisions. RCW 4.24.010, at issue in this case, uses the term "illegitimate child." An innocent child is still stigmatized by that reference.

We have made great strides in amending statutes to remove age-old terms which are offensive in our present-day society. The legislative process can use words which convey the same meaning, but are less demeaning to children. To the credit of our Legislature, it has already begun this process. RCW 4.24.010 and RCW 41.26.030 seem to be the only statutes which still refer to "illegitimate child."