[No. 22583-6-III.   Division Three.   November 9, 2004.]

CHRISTINA L. VICK BLUMENSHEIN, *Individually and as Guardian, Appellant,* v. CHARLES VOELKER, ET AL., *Respondents.*

*John A. Bardelli*, for appellant.

*Brad E. Smith*, for respondents.

¶1 BROWN, J. — This dispute partly involves whether RCW 4.24.010 was correctly applied in a summary judgment to bar Christina L. Vick Blumenshein's damage claim for herself arising from her minor daughter's injury in a bicycle-car accident with Joan M. Voelker. The undisputed facts show the mother's failure to regularly contribute to daughter Felicia Felch's support for some time both before and after the accident as required by the statute and her general lack of contact with Felicia at that time. Before the mother's suit, while the child was in the care of the father, the child had settled with Mrs. Voelker, with the father waiving any interest in the settlement. Under these facts, the trial court did not err in dismissing Ms. Blumenshein's suit. However, because genuine issues of material fact remain in dispute regarding Mrs. Voelker's negligence, the trial court erred in dismissing the negligence claim brought by Ms. Blumenshein for her minor son, John "Johnny" Jacob Felch. Accordingly, we affirm in part and reverse in part.

## FACTS

¶2 On July 12, 1999, five-year-old Felicia Felch rode her bicycle onto Northwest Boulevard in Spokane and was struck by a vehicle driven by Mrs. Voelker. William Sulvozio, a witness, was driving alongside Mrs. Voelker when he saw Felicia enter the street, notice the cars, and attempt to turn back.

¶3 Shortly before hitting Felicia, Mrs. Voelker had slowed to allow Felicia's brother, Johnny, and his friend to cross the street at a nearby intersection. Mr. Sulvozio also slowed and heard the boys yell "No" to Felicia in an attempt

to stop her from trying to cross the street. Clerk's Papers (CP) at 110. As she accelerated, Mrs. Voelker struck Felicia. The sun was setting, impairing Mrs. Voelker's vision. She lowered her visor to help block the sun. The accident reports do not state whether she was wearing sunglasses, and Mrs. Voelker could not recall if she wore them.

¶4 Mrs. Voelker claims she was traveling approximately 20 miles per hour (mph) at impact. An investigating officer calculated her speed at 20.93 mph. Mr. Sulvozio estimated her speed at 30 mph. And Dr. F. Denman Lee, an expert witness for Ms. Blumenshein, opined Mrs. Voelker was traveling between 32 and 38 mph at impact. The posted speed limit was 35 mph, but there was a sign in the vicinity stating 20 mph "when children are present." Report of Proceedings (RP) at 16. The record is unclear whether the sign referenced a school. However, a school was nearby. The investigating officer did not issue Mrs. Voelker a citation.

¶5 At the time of the accident, Felicia and her brother were living with their father, John Felch. Ms. Blumenshein was living at a homeless shelter in the Seattle area. Due to a history of drug addiction, instability, and incarceration, Ms. Blumenshein had not had significant contact with Johnny and Felicia for quite some time prior to the accident. Ms. Blumenshein had not paid court-ordered child support. Further, the children's father claims she "rarely contributed to the support of the children" in general. CP at 199. Ms. Blumenshein had brief contact with Felicia while she was in the hospital recovering from the accident, but again disappeared from the children's lives. At some point, the children were placed in foster care based on parental neglect.

¶6 In November 2000, approximately one and a half years after the accident, Ms. Blumenshein contacted the Department of Social and Health Services regarding visitation with her children. She satisfied the Department's recommendations for parent/child reunification and worked with physical, speech, and occupational therapists to assist her in caring for Felicia's special needs following the

accident. On September 7, 2001, Johnny and Felicia were placed in Ms. Blumenshein's custody.

¶7 On July 10, 2002, Ms. Blumenshein, individually and as guardian ad litem for Johnny, filed a negligence complaint against the Voelkers for damages arising out of the July 12, 1999 accident. They sought damages for "illness, physical and mental pain and suffering, emotional distress, embarrassment, anxiety, loss of enjoyment of life" and loss of "parental and child consortium." CP at 7. The Voelkers filed two separate motions for summary judgment. The first involved whether Ms. Blumenshein had a cause of action under RCW 4.24.010, alleging she was not providing support to Felicia at the time of the accident. The second motion sought to dismiss the complaint because no evidence showed Mrs. Voelker was negligent. The trial court granted both motions and dismissed the complaint. Ms. Blumenshein appealed.

## ANALYSIS

### A. Application of RCW 4.24.010

¶8 The issue is whether the trial court erred in summarily dismissing Ms. Blumenshein's individual claims arising from her daughter's injury under RCW 4.24.010 and concluding she lacked standing by not regularly contributing to Felicia's support at the time of the accident.

¶9 We review summary judgments de novo and perform the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). All facts and reasonable inferences are considered in the light most favorable to Ms. Blumenshein, the nonmoving party. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). The Voelkers bear the burden of showing no genuine dispute exists as to any

material facts. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Questions of fact may be determined as a matter of law when reasonable minds can reach only one conclusion. *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985).

¶10 Regarding a parent's cause of action for an injured child, RCW 4.24.010 provides: "A mother or father, or both, *who has regularly contributed to the support of his or her minor child* . . . may maintain or join as a party an action as plaintiff for the injury or death of the child." (Emphasis added.) Previously, this statute included language regarding children born out of wedlock. It stated that a "father cannot maintain or join as a party an action unless . . . the father has regularly contributed to the child's support." Former RCW 4.24.010 (1996). In 1997, our Supreme Court held this language violated Washington's Equal Rights Amendment. WASH CONST. art XXXI, § 1. *Guard v. Jackson*, 132 Wn.2d 660, 667, 940 P.2d 642 (1997). The legislature revised RCW 4.24.010 and in doing so included an intent statement, which provides:

> The legislature intends to provide a civil cause of action for wrongful injury or death of a minor child to a mother or father, or both, if the mother or father has had significant involvement in the child's life, including but not limited to, emotional, psychological, or financial support.

RCW 4.24.010, **Intent**; LAWS OF 1998, ch. 237, § 1.

¶11 Construction of a statute is a question of law this court reviews de novo under the error of law standard. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). The principal objective in interpreting a statute is to give effect to the legislature's intent. *Schumacher v. Williams*, 107 Wn. App. 793, 799, 28 P.3d 792 (2001), *review denied*, 145 Wn.2d 1025 (2002).

¶12 Here, the parent "must have 'significant involvement' in the child's life in order to recover." *Philippides v. Bernard*, 151 Wn.2d 376, 384, 88 P.3d 939 (2004). This

record shows Ms. Blumenshein did not have significant involvement in Felicia's life until one and a half years after the accident and did not have contact for quite some time before the accident. Reasonable minds could reach solely that conclusion.

¶13 The triggering event giving rise to Ms. Blumenshein's asserted cause of action was Felicia's injury on July 12, 1999. Plainly, the legislature intended the necessary parent involvement to be viewed at the time of the accident, not some earlier or later time. Without the injury no claim could exist. Felicia's interests were attended to by her father in the absence of Ms. Blumenshein in the form of a settlement approved by the superior court. Notably, the settlement occurred months before Ms. Blumenshein's reentry into the children's lives. Mr. Felch released his interest in the settlement. Settlements of this type would be discouraged were we to ignore the plain intent of the statute and accept Ms. Blumenshein's theory of after acquired right to sue. Moreover, had Felicia died as a result of her injuries, Ms. Blumenshein would be precluded from even making the argument.

¶14 Accordingly, we reject Ms. Blumenshein's contention that her subsequent involvement with her children reinstated her right to sue under RCW 4.24.010. We conclude the trial court did not err in determining Ms. Blumenshein lacked standing under RCW 4.24.010.

## B. Negligence

¶15 Given our above holding that the trial court correctly dismissed Ms. Blumenshein's claim based on standing, we next analyze whether the court erred in summarily dismissing Ms. Blumenshein's claim on behalf of Johnny based on its finding no genuine issue of material fact existed regarding Mrs. Voelker's negligence. The standard of review for summary judgments noted above applies equally here.

¶16 Issues of negligence and causation are questions of fact not usually susceptible to summary judgment. *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995) (citing *La Plante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975)). The burden is on the moving party to establish its right to judgment as a matter of law, and facts and reasonable inferences from the facts are considered in favor of the nonmoving party. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 452, 842 P.2d 956 (1993). The moving party may meet this burden by demonstrating no evidence exists to support the nonmoving party's case. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The burden then shifts to the party that has the burden of proof at trial, the plaintiff, to "come forward with evidence sufficient to establish the existence of each essential element of its case." *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 625, 818 P.2d 1056 (1991). If the plaintiff fails to do so, summary judgment is proper. *Id.*

¶17 The elements of a negligence claim are: (1) a legal duty owed by the defendant to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff proximately caused by the breach. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

¶18 The collision occurred in July around 8:00 P.M. at sunset. Mrs. Voelker was driving west into the setting sun. She testified she lowered her visor. She previously stopped to allow Johnny and his friend to cross Northwest Boulevard. As she accelerated, she struck Felicia who suddenly rode into Northwest Boulevard without yielding to oncoming traffic. Ms. Blumenshein's case theory is that Mrs. Voelker was driving too fast for those conditions. Every driver has a duty to "exercise due care to avoid colliding with any pedestrian upon any roadway" and to "exercise proper precaution upon observing any child upon . . . a roadway." RCW 46.61.245; *see also Robison v. Simard*, 57 Wn.2d 850, 360 P.2d 153 (1961) (users of a public street have a general duty to exercise ordinary care).

¶19 While the investigating officer concluded Mrs. Voelker was driving at 20.93 mph at the time of the accident, a witness driving alongside Mrs. Voelker estimated her speed at 30 mph. Ms. Blumenshein's expert, Dr. Lee, estimated Mrs. Voelker was traveling between 32 and 38 mph. There was a sign in the area that specified the speed limit was 20 mph when children were present; whether the sign related to the nearby school is unclear from the record.

¶20 A driver should "exercise proper precaution upon observing any child upon . . . a roadway." RCW 46-.61.245. And, where an automobile driver has reasonable grounds to apprehend that a child may run or may ride a bicycle into the driver's path, a higher degree of care is required of the driver. The driver's duty is to exercise a reasonable degree of care under the circumstances. To impose liability, it is not enough that the driver saw the child; the driver must have been able to appreciate the danger in time to avoid the injury. *Shellenberger v. Zeman*, 48 Wn.2d 885, 888, 297 P.2d 247 (1956).

¶21 Here, genuine issues of material fact remain whether Mrs. Voelker was able to appreciate the danger to avoid striking Felicia. Mr. Sulvozio noticed Felicia enter the roadway and attempt to turn back. This conflicts with Mrs. Voelker's statement that Felicia suddenly and unexpectedly entered Northwest Boulevard. Also in question is whether Ms. Voelker exercised reasonable care when she was on notice that children were in the area based on her observation of Johnny and his friend. Moreover, the evidence in the record conflicts on the exact location of the accident along Northwest Boulevard.

¶22 In sum, there are genuine issues of material fact in dispute regarding Mrs. Voelker's negligence. The trial court erred by granting summary judgment in favor of the Voelkers, and dismissing Ms. Blumenshein's negligence complaint on behalf of Johnny.

¶23 Affirmed in part. Reversed in part.

Sweeney, A.C.J., and Kurtz, J., concur.