275 P.3d 1119 (2012)
174 Wn.2d 425
The ESTATE OF Ashlie BUNCH, by and through its Personal Representative, Steven Bunch; and Steven Bunch, individually, Plaintiffs,
v.
McGRAW RESIDENTIAL CENTER, a d/b/a of Seattle Children's Home, a Washington nonprofit corporation, Respondent, and
Alexander Chun, individually; Edrene Patterson and Anthony Patterson, husband and wife; Susan Riley and Roy Riley, Jr., husband and wife; and John and Jane Does 1-10, Defendants, and
Amy Kozel, Petitioner-Intervenor.
No. 85679-6.
Supreme Court of Washington, En Banc.
Argued November 8, 2011.
Decided May 3, 2012.
*1121 Elena Luisa Garella, Attorney at Law, Jeffrey Lawrence Herman, Herman Law Firm LLC, Seattle, WA, for Petitioner.
Lawrence M. Kahn, Lawrence Kahn Law Group PS, Bellevue, WA, for Plaintiffs.
Pamela Marie Andrews, Kristen Dorrity, Andrews Skinner, P.S., Seattle, WA, for Respondent.
George M. Ahrend, Ahrend Albrecht PLLC, Moses Lake, WA, Bryan Patrick Harnetiaux, Spokane, WA, amicus counsel for Washington State Assoc. for Justice.
OWENS, J.
¶ 1 This case arises out of the tragic death of a teenage girl, Ashlie Bunch. Ashlie's adoptive father, Steven Bunch (Bunch) brought an action under RCW 4.24.010, a statute creating a right of action for the injury or death of a child, against the treatment center where Ashlie committed suicide, McGraw Residential Center. Ashlie's adoptive mother, Amy Kozel, sought to join the lawsuit as a necessary party under CR 19(a). The superior court denied Kozel's motion and the Court of Appeals affirmed. Finding that Kozel satisfied statutory standing requirements and CR 19(a), we reverse the Court of Appeals and remand for further proceedings.

Facts
¶ 2 This case involves both disputed and undisputed facts. There is no dispute about the facts prior to 2003. In 1998, Kozel and Bunch, then married and living in Florida, adopted two biological sisters: Ashlie and Emily. Ashlie was two years older than Emily. In 2001, Kozel and Bunch divorced. Ashlie and Emily remained with Kozel in Florida while Bunch moved to Washington State. Kozel provided all parental functions while Bunch visited his daughters twice and regularly contributed child support. This arrangement lasted until 2003.
¶ 3 In 2003, Kozel and Bunch arranged for Ashlie to move to Washington and live with Bunch. Kozel decided that this was necessary because Ashlie, who was at some point diagnosed with, among other things, a fetal alcohol spectrum disorder, oppositional defiant disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder, began assaulting her younger sister Emily.
¶ 4 Kozel and Bunch give conflicting accounts of Kozel's involvement in Ashlie's life following Ashlie's move to Washington. Kozel claims that she "spoke with [Ashlie] regularly by phone, at least once a week, until she was admitted to inpatient facilities," sent her Christmas presents, and hoped that Ashlie would be able to live with Emily and Kozel again in the future. Clerk's Papers at 57. Bunch, on the other hand, claims that Kozel "did not have a relationship of any kind with Ashlie," only once sent a Christmas present to Ashlie, and called Ashlie only once. Id. at 69-70.
¶ 5 Around 2006, Ashlie's mental health issues appear to have worsened. In 2006, Ashlie was hospitalized at three different children's hospitals because of her mental health problems. On March 13, 2007, Ashlie was involuntarily committed to Kitsap Mental Health Hospital due to her statements that she intended to kill herself. In May 2007, she was transferred to the McGraw Residential Center. While under the care of the McGraw Residential Center, Ashlie committed suicide on January 29, 2008.
¶ 6 In May 2009, Bunch, on behalf of himself and Ashlie's estate, filed a complaint in King County Superior Court against McGraw Residential Center and several of its employees. He alleged the tort of outrage, medical malpractice, negligent hiring, training, and supervision, and wrongful death of a child. Bunch provided Kozel with notice of the action in accordance with RCW 4.24.010. In June 2009, Kozel filed a timely motion to intervene pursuant to CR 19(a). McGraw Residential Center and Bunch both opposed Kozel's motion to intervene. The trial court denied Kozel's motion to intervene without stating its basis for doing so. Kozel filed a timely notice of appeal on July 14, 2009. On September 21, 2009, while the appeal remained pending, the trial court dismissed the case pursuant to a stipulation between Bunch and McGraw Residential Center that followed a settlement between the two parties.
*1122 ¶ 7 On February 7, 2011, a divided panel of the Court of Appeals affirmed the trial court's order denying Kozel's motion to intervene. Estate of Bunch v. McGraw Residential Ctr., 159 Wash.App. 852, 855, 248 P.3d 565 (2011). We granted Kozel's petition for review. Estate of Bunch v. McGraw Residential Ctr., 171 Wash.2d 1021, 257 P.3d 662 (2011).

Issue

Did the trial court err in denying Kozel's motion to intervene?

Analysis

I. Standard of Review

¶ 8 "The trial court's decision on whether a party is necessary under CR 19(a) is reviewed for an abuse of discretion." Freestone Capital Partners, LP v. MKA Real Estate Opportunity Fund I, LLC, 155 Wash.App. 643, 669, 230 P.3d 625 (2010) (citing Gildon v. Simon Prop. Grp., Inc., 158 Wash.2d 483, 493, 145 P.3d 1196 (2006)). Legal conclusions, including the proper interpretations of statutes, are reviewed de novo. Gildon, 158 Wash.2d at 493, 145 P.3d 1196; Dowler v. Clover Park Sch. Dist. No. 400, 172 Wash.2d 471, 481, 258 P.3d 676 (2011).

II. The Trial Court Erred in Denying Kozel's Motion To Intervene

¶ 9 The trial court erred in denying Kozel's motion to intervene pursuant to CR 19(a).[1] CR 19(a) provides, in relevant part, as follows:
A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (A) as a practical matter impair or impede his ability to protect that interest.
A party satisfying the requirements of CR 19(a) is a "necessary party." Burt v. Dep't of Corr., 168 Wash.2d 828, 833, 231 P.3d 191 (2010) (plurality opinion); id. at 839, 231 P.3d 191 (Sanders, J., concurring). There appears to be no dispute that if Kozel has standing under RCW 4.24.010, she would be a necessary party under CR 19(a). Kozel was clearly subject to service of process, and her joinder would not deprive the court of jurisdiction. Kozel also satisfies the second requirement of CR 19(a) by claiming an interest in participating in the wrongful death action arising out of her adopted daughter's tragic and untimely death. Further, RCW 4.24.010 "creates only one cause of action," and failure of the parent not named as a plaintiff to join "shall bar such parent's action to recover any part of an award made to the party instituting the suit." Failure to join Kozel therefore effectively denies her the opportunity to recover for the wrongful death of her daughter. Thus, Kozel satisfies the final CR 19(a) requirement.
¶ 10 The fundamental point of contention in this case is whether Kozel has standing to proceed under RCW 4.24.010. This requires that we interpret the statute. Interpretation of a statute is guided by well-established principles. A court's "fundamental objective" when interpreting a statute "is `to discern and implement the intent of the legislature.'" Flight Options, LLC v. Dep't of Revenue, 172 Wash.2d 487, 500, 259 P.3d 234 (2011) (quoting State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003)). Legislative intent is implemented "by giving effect to the plain meaning of a statute," and the plain meaning "may be gleaned `from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" Id. (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 11, 43 P.3d 4 (2002)). If a "statute is `susceptible to two or more reasonable interpretations,' the statute is ambiguous." Id. (quoting Burton v. Lehman, 153 Wash.2d 416, 423, 103 P.3d 1230 (2005)). "However, a statute is not ambiguous merely *1123 because two or more interpretations are conceivable." Id. If a statute is ambiguous, we "may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent." Rest. Dev., Inc. v. Cananwill, Inc., 150 Wash.2d 674, 682, 80 P.3d 598 (2003).
¶ 11 We must pause to address whether this statute is to be liberally or strictly construed. The Court of Appeals strictly construed the statute because it is in derogation of the common law. Bunch, 159 Wash.App. at 865, 248 P.3d 565. Amicus curiae Washington State Association for Justice argues that the wrongful death statutes should instead be given a liberal construction because they are remedial in nature. The distinction between "liberal construction" and "strict construction" is easily overstated. Neither a liberal construction nor a strict construction may be employed to defeat the intent of the legislature, as discerned through traditional processes of statutory interpretation. See Armijo v. Wesselius, 73 Wash.2d 716, 720, 440 P.2d 471 (1968) ("Whether done liberally or strictly, judicial interpretation is necessary."). Strict construction is simply a requirement that, where two interpretations are equally consistent with legislative intent, the court opts for the narrower interpretation of the statute.[2]See State v. Johnson, 119 Wash.2d 167, 172, 829 P.2d 1082 (1992); cf. State v. Ervin, 169 Wash.2d 815, 823 n. 1, 239 P.3d 354 (2010) ("[T]he rule of lenity ... is applicable only after employing tools of statutory construction." (citation omitted)); Wichert v. Cardwell, 117 Wash.2d 148, 154-55, 812 P.2d 858 (1991) (discussing, in dicta, the "proper use of strict construction"). In any event, in the context of wrongful death statutes the modern trend of this court has been away from strict construction. See, e.g., Beggs v. Dep't of Social & Health Servs., 171 Wash.2d 69, 82, 247 P.3d 421 (2011); Klossner v. San Juan County, 93 Wash.2d 42, 47-48, 605 P.2d 330 (1980); Armijo, 73 Wash.2d at 720-21, 440 P.2d 471. In line with this modern trend, we hold that RCW 4.24.010 should be given a fair reading, one that is neither strict nor liberal, to effectuate the legislature's intent.
¶ 12 We now turn to the language of RCW 4.24.010 that forms the basis of the disagreement in this case:

A mother or father, or both, who has regularly contributed to the support of his or her minor child, and the mother or father, or both, of a child on whom either, or both, are dependent for support may maintain or join as a party an action as plaintiff for the injury or death of the child.

(Emphasis added.) In particular, the key question is whether the term "has regularly contributed" requires that the support be continuing at the time of the child's death. The context of the statute, together with our duty to avoid absurd results, see State v. Hall, 168 Wash.2d 726, 737, 230 P.3d 1048 (2010), compels us to conclude that it does not.
¶ 13 The term "has regularly contributed" is in the present perfect tense. See The Chicago Manual of Style 5.126, at 237 (16th ed. 2010). This tense "denotes an act, state, or condition that is now completed or continues up to the present." Id. The dual meaning of this construction is apparent: it may either indicate a completed action that took place at "a time in the indefinite past" or "a past action that comes up to and touches the present." Id. Several courts have noted the potential for ambiguity. See Padilla-Romero v. Holder, 611 F.3d 1011, 1013 (9th Cir. 2010); In re Interest of A.H.B., 791 N.W.2d 687, 689 (Iowa 2010). However, the term is not necessarily ambiguous the plain meaning of "has regularly contributed" may simply include both temporal definitions (i.e., both completed and ongoing actions). Absent contrary legislative intent discerned from the context, this is the plain meaning of the statute.
¶ 14 The use of the word "regularly" does not call into question the plain meaning of the statute. We may accept the dictionary *1124 definitions offered by the Court of Appeals of "`[o]ccurring at fixed intervals; periodic: regular payments,'" "`[o]ccurring with normal or healthy frequency,'" and "`[n]ot varying; constant.'" Bunch, 159 Wash.App. at 862, 248 P.3d 565 (quoting The American Heritage Dictionary 1521 (3d ed. 1992)). Even so defined, the term "regularly" does not contradict or alter the present perfect tense. Rather, it specifies that within the designated period beginning in the past, whether completed or ongoing as of the date of injury or death, the contribution of support must not have been merely sporadic, but must have occurred "with normal or healthy frequency." American Heritage Dictionary, supra, at 1521.
¶ 15 Context confirms that the legislature did not intend to exclude a parent who "has regularly contributed to the support" of his or her child in the past from participation as a plaintiff in a lawsuit under RCW 4.24.010. Two aspects of the statute make this a reasonable inference. First, in the same sentence, the legislature uses the present tense "are dependent" to refer to parents that may recover for the injury or death of a child without respect to the child's minority. RCW 4.24.010. As the Court of Appeals has recognized, this statute requires that the relevant determinations be made "at the time of the accident." Blumenshein v. Voelker, 124 Wash.App. 129, 135, 100 P.3d 344 (2004). Thus, under the statute, the determinations the legislature has called for are whether parents "are dependent for support" on their children as of the time of the accident and whether a parent "has regularly contributed to the support of his or her minor child" as of the time of the accident.[3] RCW 4.24.010. This suggests that the legislature deliberately chose not to employ the present tense with respect to contribution of support, either alone or as a requirement in addition to the present perfect tense. See Koenig v. City of Des Moines, 158 Wash.2d 173, 182, 142 P.3d 162 (2006) ("When the legislature employs different terms in a statute, we presume a different meaning for each term."). Second, the statute plainly contemplates participation by parents with differing involvement in the child's life and provides for damages to be awarded accordingly. RCW 4.24.010 ("[D]amages may be awarded to each plaintiff separately, as the trier of fact finds just and equitable."). This context certainly suggests that the legislature did not intend for the parent's regular support to have necessarily continued through the time of the child's injury or death to participate in an action pursuant to RCW 4.24.010.
¶ 16 An interpretation of the statute requiring that the parent's support be ongoing at the time of the child's injury or death would also lead to absurd results. For example, if a child is kidnapped and, years later, the child suffers injury or death, under the interpretation adopted by the Court of Appeals, the child's parents would be unable to bring an action under RCW 4.24.010 because, at the time of the injury or death, the parents were not contributing support. As another example, the Court of Appeals interpretation would leave a child's parent who had been in a coma for a period of months unable to recover if the child were injured or killed during those months. These results would be manifestly absurd; the legislature could not have intended them. Consequently, we are compelled to reject an interpretation that would allow for these results.
¶ 17 In sum, we hold that a parent "who has regularly contributed to the support of his or her minor child," RCW 4.24.010, may bring or join an action for injury or death of the child, even if, at the time of death, the parent is not presently providing support.[4] The undisputed record in this case clearly establishes that Kozel met this standard. The term "support" in RCW 4.24.010 encompasses emotional, psychological, and financial contributions; any one type of support is sufficient. See Postema v. Postema Enters., Inc., 118 Wash.App. 185, 197-99, 72 P.3d 1122 (2003) (interpreting "support" in light of *1125 legislature's statement of intent). From 1998 until 2003, Kozel lived with and directly supported Ashlie. This is sufficient to give Kozel standing. Insofar as the trial court concluded otherwise, it abused its discretion.

III. The Settlement Must Be Set Aside

¶ 18 A court may overturn a judgment where the parties failed to join a necessary party. Burt, 168 Wash.2d at 834, 231 P.3d 191 (citing Geroux v. Fleck, 33 Wash. App. 424, 655 P.2d 254 (1982)). Similarly, we must set aside the settlement reached between Bunch and McGraw Residential Center following Kozel's appeal of the denial of her motion to intervene as a plaintiff. Because RCW 4.24.010 "creates only one cause of action," Kozel's alternative proposal that she be permitted to pursue a second action does not appear to be viable.[5]

Conclusion
¶ 19 We hold that a cause of action for the injury or death of a minor child is not limited to parents who provided support at the time of the injury or death; it is enough that the parent has, in the past, regularly contributed to the child's support. Because the undisputed facts demonstrate that Kozel has regularly contributed to the support of her adopted daughter Ashlie, we reverse the Court of Appeals and hold that the trial court erred in denying Kozel's motion to intervene as a necessary party under CR 19(a). We therefore remand the case to the superior court to vacate its order dismissing the case, set aside the settlement between Bunch and McGraw Residential Center, and conduct further proceedings consistent with this opinion.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, TOM CHAMBERS, MARY E. FAIRHURST, DEBRA L. STEPHENS, and CHARLES K. WIGGINS, Justices and GERRY L. ALEXANDER, Justice Pro Tem.
J.M. JOHNSON, J. (dissenting).
¶ 20 In the unfortunate event of the death of a child, the legislature has created a statutory right to sue for wrongful death only for a parent "who has regularly contributed to the support of his or her minor child." RCW 4.24.010. The plain language and remedial provisions of this statute demonstrate that a parent must fulfill an ongoing responsibility to support the minor child in order to recover. The claimant here, Amy Kozel, lived clear across the country in Florida for the five years preceding the death of her daughter, Ashlie Bunch. She had no relationship with Ashlie during this period, apart from a few brief encounters. Kozel did not even attend Ashlie's memorial service. As a result, it cannot be said that Kozel fulfilled her responsibility to "regularly contribute[] to [Ashlie's] support," entitling her to recover in a wrongful death action.
¶ 21 Furthermore, the statement of intent adopted by the legislature in RCW 4.24.010 broadly defines support to include any form of emotional, psychological, or financial support. This legislative intent requires each claiming parent to have maintained some significant connection with the child during his or her life. Of course, a parent would not be disqualified for failing to maintain this connection due to circumstances outside the parent's control, such as child abduction. The majority also fashions an inequitable remedy here in that it subjects McGraw Residential Center to an even greater amount of potential liability after settlement of a qualifying parent's claim. Thus, I would affirm the Court of Appeals in rejecting Kozel's motion to intervene as a necessary party and respectfully dissent.

Analysis
¶ 22 "`[C]auses of action for wrongful death are strictly a matter of legislative grace and are not recognized in the common law.'" Philippides v. Bernard, 151 Wash.2d 376, 390, 88 P.3d 939 (2004) (quoting Tait v. Wahl, 97 Wash.App. 765, 771 987 P.2d 127 (1999)). As a result, the wrongful death *1126 statute in RCW 4.24.010 should be strictly construed. See McNeal v. Allen, 95 Wash.2d 265, 269, 621 P.2d 1285 (1980) (statutes in derogation of the common law must be strictly construed). This dictates that no change in law will be found by a court unless the legislature has expressed a clear intent to the contrary. Id. Even under a simple reading of legislative intent, RCW 4.24.010 requires a parent making a claim to maintain some kind of connection with the child until close to the time of death in order to recover for a wrongful death to the child.[1]
¶ 23 The plain language of RCW 4.24.010 specifies that "[a] mother or father ... who has regularly contributed to the support of his or her minor child" may recover "as plaintiff for the injury or death of the child." Where the legislature has not defined a particular term in a statute, a standard dictionary definition controls. See State v. Watson, 146 Wash.2d 947, 954, 51 P.3d 66 (2002). After accepting the dictionary definition of "regular" from the Court of Appeals, the majority alters its meaning by relying on the present perfect tense, "has regularly contributed," to claim that the statute allows parents to recover even if they did not provide frequent support up to a time close to the child's death. This is directly contrary to legislative language and intent in the statute. Majority at 1123-24. The new interpretation of the statute also ignores part of the dictionary definition of the word "regular," which requires the support to be unvarying and constant. Majority at 1123. Thus, any support here that arguably occurred in the distant past cannot be considered "regular" because it fails to meet the unvarying and constant requirement.
¶ 24 Additionally, our proposed reading of RCW 4.24.010 is consistent with the remedial provisions specified by the legislature. "Statutory provisions must be read in their entirety and construed together, not piecemeal." ITT Rayonier, Inc. v. Dalman, 122 Wash.2d 801, 807, 863 P.2d 64 (1993). Here, RCW 4.24.010 provides that damages may be recovered for "medical, hospital, medication expenses, and loss of services and support," and also for "the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship." RCW 4.24.010.
¶ 25 If a parent is no longer in contact and has not "regularly contributed" to the support of a child, it is difficult to measure any loss of services, support, love, companionship, or relationship. Furthermore, the injury or death would not have caused the loss of love, companionship, or relationship because the parent had long ago voluntarily decided to stop supporting the child before the occurrence of death. As a result, a parent who provided support in the distant past has not "regularly contributed" under RCW 4.24.010 if the frequent support did not continue until a time close to the time of death.
¶ 26 The legislature's statement of intent further confirms this reading of the plain language of the statute. In its statement of intent, the legislature defined support to include any type of emotional, psychological, and financial support. With the broad definition of "support" provided by the legislature in its statement of intent, it is not burdensome to require a claiming parent to maintain a meaningful connection to the child over the course of the child's lifetime.
¶ 27 Lastly, the majority claims that requiring ongoing parental support would lead *1127 to absurd results in situations where the child is kidnapped or the parent falls into a coma. The hypothetical of absurd results, however, does not take other conventions of law into account in determining the effect of the statute. See John F. Manning, The Absurdity Doctrine, 116 Harv. L.Rev. 2387, 2465-76 (2003) (explaining that modern textual interpretation often relies on background legal conventions to avoid seeming absurdities). Under RCW 4.24.010, a parent is unlikely to be penalized for failure to fulfill an ongoing responsibility due to circumstances outside his or her control. There are well-established defenses in contract law in circumstances of impossibility and incapacity. Under RCW 4.24.010, courts would likely recognize that an abducted child or incapacitated parent suspends the requirement of maintaining some connection to the child until a time close to the time of death.
¶ 28 Here, Steven Bunch claims that Kozel did not provide any financial support and had no relationship with Ashlie from the time Ashlie moved to live with him in 2003 and her death in 2008. Kozel lived clear across the country in Florida for the five years preceding Ashlie's death. Bunch asserts that Kozel had only brief contact with Ashlie on four separate occasions during this period. Bunch claims that Kozel sent Ashlie a Christmas present in December 2004, and Kozel had one, five-minute phone conversation with Ashlie in December 2007. Ashlie also called Florida to speak with her sister on two occasions, and Kozel refused Ashlie's requests. As can be seen, these anecdotal interactions do not amount to frequent emotional, psychological, or financial support. Apart from these brief encounters, Kozel did not send any birthday cards, holiday cards, or presents to Ashlie. Furthermore, Kozel never called Ashlie, even on holidays.
¶ 29 Bunch also asserts that Kozel had made it clear to him that she did not want Ashlie in Florida. When Bunch called Kozel to update her on Ashlie's condition, she reportedly replied, "[W]ell, good luck with that." Clerk's Papers (CP) at 71. Kozel also chose not to attend the memorial service for Ashlie. In response, Kozel only rebutted Bunch's specific claims with general statements alleging she kept in touch with Ashlie and "spoke with her regularly by phone, at least once a week, until she was admitted to inpatient facilities." CP at 57. Considering that Ashlie was admitted to inpatient facilities as early as 2003, these general statements from Kozel are not sufficient to rebut the more specific statements by Bunch for purposes of a CR 19(a) motion. Thus, I would affirm the Court of Appeals and deny Kozel's motion to intervene as a necessary party.

Conclusion
¶ 30 I would hold that RCW 4.24.010 requires a parent to fulfill an ongoing rule and responsibility to support a minor child in order to recover in a wrongful death or personal injury action. Under RCW 4.24.010, a parent must provide frequent support to the child until a time close to the time of injury or death. Of course, a parent would not be penalized for failing to provide this support due to circumstances outside the parent's control. Here, Kozel failed to show that she provided frequent support to Ashlie up to a time in close proximity to the time of Ashlie's death. Thus, I would affirm the Court of Appeals and deny Kozel's motion to intervene under CR 19(a).
NOTES
[1] Before the trial court, Kozel relied exclusively on CR 19 to justify her participation in the action. Amicus curiae Washington State Association for Justice urges us to hold that joinder under RCW 4.24.010 is a matter of right. This argument was not presented to the trial court, and we decline to consider it. See RAP 2.5(a).
[2] More rigorous application of the doctrine of strict construction of statutes in derogation of the common law has been rightly decried as resulting "in artificial, gratuitous, judicially fabricated obstacles to progress through legislation" having "no justification in principle." 3 Norman J. Singer, Sutherland Statutory Construction § 58.03, at 75 (5th ed. 1992).
[3] The import of the latter requirement is well illustrated by Blumenshein, in which the court held that a parent who "did not have significant involvement in [the child's] life until one and a half years after the accident" did not have standing to sue under RCW 4.24.010. 124 Wash.App. at 135, 100 P.3d 344.
[4] We disapprove any language in Blumenshein that is inconsistent with this opinion.
[5] The issue of the appropriate remedy has been insufficiently briefed by both parties. We do not foreclose the possibility that, given fuller briefing on the subject in another case, an alternative remedy may be determined to be appropriate.
[1] The majority opinion argues for a "fair" reading of the statute in order to effectuate the legislature's intent. Majority at 1123. The rationale of this approach is that strict construction of statutes in derogation of the common law often impedes social progress without any justification in principle. Id. at 1123 n. 2. Basic canons of statutory interpretation, however, such as the derogation of common law principle, advance important goals of judicial decision making. First, these canons provide simple and straightforward methods of statutory interpretation that minimize judicial decision-making costs, litigation costs, and legal uncertainty. See Adrian Vermeule, Interpretive Choice, 75 N.Y.U. L.Rev. 74, 128-29 (2000). Second, the canons provide content-independent methods of deciding a case without injecting one's own personal views regarding optimal public policy in a given area. See Jonathan R. Macey & Geoffrey P. Miller, The Canons of Statutory Construction and Judicial Preferences, 45 Vand. L.Rev. 647, 663 (1992). Thus, RCW 4.24.010 should be strictly construed as a statute enacted in derogation of the common law, but a simple reading of legislative intent without application of the derogation of common law principle would produce the same result.